UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

GEORGE LOPEZ,

                          Plaintiff,

                                                                           9:11-CV-0418
v.                                                                  (LEK/TWD)

D. BUSHEY, D. JOLICOEN[1]
C. GRIMSHAW, V. OLSEN,
W. HUNT, D. VENNE,
JOHN DOES 1-2,

                          Defendants.
_____

APPEARANCES:                                              OF COUNSEL:

GEORGE LOPEZ, 01-A-5343
Plaintiff *pro se*
Cayuga Correctional Facility
P.O. Box 1186
Moravia, New York 13118

HON. ERIC T. SCHNEIDERMAN                      GREGORY J. RODRIGUEZ, ESQ.
Attorney General for the State of New York
Counsel for Defendants
The Capitol
Albany, New York 12224

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## REPORT-RECOMMENDATION and ORDER

       This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has been referred to me for Report and Recommendation by the Honorable Lawrence E. Kahn, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).

---

[1]     The record in this case contains a variety of spellings for the name of Defendant Jolicoen. *Compare* Dkt. No. 1 ("Jolicoen") *with* Dkt. No. 11-3 ("Joliocouer") *and* Dkt. No. 45 ("Jolicoeur"). In this Report-Recommendation, I have used the spelling listed on the docket.

Plaintiff George Lopez claims that Defendants subjected him to excessive force and then conspired to cover up the incident. (Dkt. No. 1.) Currently pending before the Court is Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Dkt. No. 45.) For the reasons discussed below, I recommend that the Court grant the motion in part and deny it in part.

I.  **FACTUAL AND PROCEDURAL SUMMARY**

Plaintiff George Lopez was incarcerated at Clinton Correctional Facility from October 7, 2005, through January 9, 2006. (Dkt. No. 45-6 ¶ 4.) He alleges that on the afternoon of the November 20, 2005, he was involved in an altercation with two other inmates. (Dkt. No. 1 at 5.) Officers broke up the fight and Defendants Hunt and Olsen escorted Plaintiff to a room in the facility's hospital. *Id*. There, Plaintiff alleges that Defendants Hunt, Olsen, Bushey, Jolicoen, Grimshaw, and Venne, subjected him to excessive force using a night stick, their fists, and their feet. *Id*. Plaintiff alleges that Defendants stripped him naked after the initial beating. *Id*. at 6. Plaintiff alleges that Defendant Hunt then used six-inch institutional keys to penetrate Plaintiff's rectum while Defendants Venne and John Does 1-2 held Plaintiff down. *Id*.

Plaintiff alleges that Defendants "conspired to cover up the incident" by filing false and contradictory reports. *Id*. at 11.

In his verified complaint, Plaintiff alleges that he attempted to exhaust his administrative remedies regarding this incident, but that "prison officials hampered and interfered with his filing of a complaint with the Inmate Grievance Program ("IGP")." (Dkt. No. 1 at 4.) Specifically, Plaintiff alleges that "Sergeant Manos, . . . who happens to have keys to the Mail Box, looks through the Mail daily and, if he sees any Grievances, he will remove them and tear them up.

2

Sergeant Manos will come to the inmate[']s cell with the Grievance and tear it in the inmate[']s face. Hence that is why Plaintiff's mail never got to it[]s destination or his Grievances processed." *Id*. at 9. Plaintiff alleges that he "was able to file a complaint with the Inspector General's Office by having another inmate's family contact his family and passing a message which informed Plaintiff['s] family to contact the Inspector General's Office about the assault." *Id*. at 4.

At his deposition, Plaintiff testified that when he placed a grievance in the outgoing mail box in the Clinton SHU, Sergeant Manos ripped it up. (Dkt. No. 45-4 at 126:2-127:3.[2]) Plaintiff tried again to send a grievance from the Clinton SHU, this time in a stamped envelope. *Id*. at 127:4-8. Plaintiff testified that Sergeant Manos "opened it again, so I gave up as far as doing that." *Id*. at 127:19-20.

There is no record at Clinton of Plaintiff ever filing a grievance at that facility. (Dkt. No. 45-6 ¶ 10; Dkt. No. 45-7 ¶ 3.) "[P]ersonnel records maintained at Clinton indicate that there was no Sergeant, or any employee, with the last name of Manos employed at Clinton in 2005-2006 or at anytime thereafter." (Dkt. No. 45-8 ¶ 2.)

On January 2, 2006, Plaintiff wrote a letter to the Central Office Review Committee ("CORC"). (Dkt. No. 45-4 at 185.) In opposition to the motion for summary judgment, Plaintiff declares under penalty of perjury that he had another inmate send the letter "due to his mail being tampered with." (Dkt. No. 52 at 11.) In the letter, Plaintiff stated that he had attempted to file a grievance with Clinton's grievance department, but had received no response. (Dkt. No. 45-4 at

---

[2] Citations to page numbers in Plaintiff's deposition transcript refer to the page numbers in the original document rather than to the page numbers assigned by the Court's electronic filing system.

3

185.) Plaintiff stated that he had attempted to file a grievance with Clinton's superintendent, but had received no response. *Id*. He stated that "I am now continuing my exhaustion requirements by filing my complaint with this office as a final stage. There exists a possibility that my mail may not have reached it[]s destination." *Id*.

The director of the DOCCS Inmate Grievance Program, Thomas G. Eagen, responded to Plaintiff's letter. (Dkt. No. 45-7 at 4.) He stated that:

> Contact with the facility administration reveals there is no record of a grievance containing allegations of assault and abuse.
>
> Department of Correctional Services' policy . . . provides inmates with an orderly, fair, simple and expeditious method of resolving grievances pursuant to the Correction Law. The directive makes no provision for an inmate to refer grievances directly to Central Office. You are advised that you must submit your grievance or appeal directly to the Grievance Clerk at the facility. Therefore, your documents are being returned to you. We will not retain a copy of your documents in this office.

*Id*.

In support of the motion for summary judgment, Jeffery Hale, the Assistant Director of DOCCS' Inmate Grievance Program, declares that "DOCCS records reflect that [Plaintiff] did not appeal to CORC regarding any grievance . . . with respect to these claims." (Dkt. No. 45-5 ¶ 12.)

Plaintiff filed this action in the Western District of New York in December 2007. (Dkt. No. 1 at 22.) On March 24, 2011, that court ordered that the action be transferred to this District. (Dkt. No. 23.) Defendants now move for summary judgment. (Dkt. No. 45.) Plaintiff has opposed the motion. (Dkt. No. 52.)

4

## II. APPLICABLE LEGAL STANDARDS

### A. Legal Standard Governing Motions for Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists. *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006). Only after the moving party has met this burden is the nonmoving party required to produce evidence demonstrating that genuine issues of material fact exist. *Id*. at 273. The nonmoving party must do more than "rest upon the mere allegations . . . of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 & n.11 (1986). Rather, a dispute regarding a material fact is *genuine* "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material[3] fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008).

### B. Legal Standard Governing Motion to Dismiss for Failure to State a Claim

To the extent that a defendant's motion for summary judgment under Federal Rule of Civil Procedure 56 is based entirely on the allegations of the plaintiff's complaint, such a motion

---

[3] A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson*, 477 U.S. at 248.

5

is functionally the same as a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). As a result, "[w]here appropriate, a trial judge may dismiss for failure to state a cause of action upon motion for summary judgment." *Schwartz v. Compagnie Gen. Transatlantique*, 405 F.2d 270, 273 (2d Cir. 1968); *accord*, *Katz v. Molic*, 128 F.R.D. 35, 37-38 (S.D.N.Y. 1989) ("This Court finds that . . . a conversion [of a Rule 56 summary judgment motion to a Rule 12(b)(6) motion to dismiss the complaint] is proper with or without notice to the parties."). Accordingly, it is appropriate to summarize the legal standard governing Federal Rule of Civil Procedure 12(b)(6) motions to dismiss.

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) on the ground that the complaint fails to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (emphasis added). "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not shown -- that the pleader is entitled to relief." *Id.* at 679 (internal citation and punctuation omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the

material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). Courts are "obligated to construe a *pro se* complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

## III. ANALYSIS

### A. Excessive Force Claims

Defendants argue that Plaintiff's excessive force claims should be dismissed because Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"). (Dkt. No. 45-2 at 3-10.[4]) In the alternative, Defendants argue that Plaintiff has failed to raise a triable issue of fact that Defendants Grimshaw and Olsen subjected him to excessive force. *Id*. at 13-16. For the reasons discussed below, I recommend that the Court reject these arguments and allow Plaintiff's excessive force claims to proceed.

#### 1. Exhaustion of Administrative Remedies

Defendants argue that they are entitled to summary judgment dismissing Plaintiff's excessive force claims because Plaintiff failed to exhaust his administrative remedies as required by the PLRA. (Dkt. No. 45-2 at 3-10.) I find that Plaintiff has raised a triable issue of fact regarding exhaustion and recommend that the Court deny Defendants' motion for summary

---

[4] Citations to page numbers in Defendants' memorandum of law refer to the page numbers in the original document rather than to the page numbers assigned by they Court's electronic filing system.

judgment on this ground.

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). In order to properly exhaust administrative remedies under the PLRA, inmates are required to complete the administrative review process in accordance with the rules applicable to the particular institution to which they are confined. *Jones v. Bock*, 549 U.S. 199, 218 (2007) (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). In New York state prisons, the Department of Corrections and Community Supervision ("DOCCS") has a well-established three-step inmate grievance program. N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5 (2013).

Generally, the DOCCS IGP involves the following procedure for the filing of grievances. First, an inmate must file a complaint with the facility's IGP clerk within twenty-one calendar days of the alleged occurrence. *Id.* at § 701.5(a) (2010). A representative of the facility's inmate grievance resolution committee ("IGRC") has sixteen calendar days from receipt of the grievance to informally resolve the issue. *Id.* at 701.5(b)(1). If there is no such informal resolution, then the full IGRC conducts a hearing within sixteen calendar days of receipt of the grievance (*Id*. at § 701.5(b)(2)), and issues a written decision within two working days of the conclusion of the hearing. *Id.* at § 701.5(b)(3).

Second, a grievant may appeal the IGRC decision to the facility's superintendent within

8

seven calendar days of receipt of the IGRC's written decision. *Id*. at 701.5(c)(1). Inmates claiming harassment by DOCCS employees may skip IGRC review and proceed directly to the second step by filing their grievance directly with the superintendent. *Id*. at § 701.8. If the grievance involves an institutional issue (as opposed to a DOCCS-wide policy issue), the superintendent must issue a written decision within twenty calendar days of receipt of the grievant's appeal. *Id*. at § 701.5(c)(3)(ii). Grievances regarding DOCCS-wide policy issues are forwarded directly to the central office review committee ("CORC") for a decision under the process applicable to the third step. *Id.* at 701.5(c)(3)(i).

Any failure by the IGRC or the superintendent to timely respond to a grievance or first-level appeal, respectively, can be appealed to the next level, including CORC, to complete the grievance process. *Id*. § 701.6(g).

Third, a grievant may appeal to CORC within seven working days of receipt of the superintendent's written decision. *Id*. at 701.5(d)(1)(i). CORC is to render a written decision within thirty calendar days of receipt of the appeal. *Id.* at 701.5(d)(3)(ii). If a prisoner appeals to CORC but does not receive a decision, he has failed to exhaust his administrative remedies. *See Mendez v. Artuz*, No. 01 CIV. 4157, 2002 U.S. Dist. LEXIS 3263, at *4, 2002 WL 313796, at *2 (S.D.N.Y. Feb. 27, 2002).[5]

If a prisoner has failed to properly follow each of the applicable steps prior to commencing litigation, he has failed to exhaust his administrative remedies. *Woodford*, 548 U.S. at 93.

---

[5] The Court will provide Plaintiff with a copy of all of the unpublished decisions cited in this Report-Recommendation in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Here, Plaintiff did not receive a response from CORC and thus did not properly exhaust his administrative remedies. Plaintiff's failure to exhaust, however, does not end the inquiry. The Second Circuit has held that a three-part inquiry is appropriate where a prisoner has failed to exhaust his available administrative remedies. *Hemphill v. New York*, 380 F.3d 680, 686, 691 (2d Cir. 2004).[6]

First, "the court must ask whether [the] administrative remedies [not pursued by the prisoner] were in fact 'available' to the prisoner." *Id*. at 686 (citation omitted). Here, as discussed above, administrative remedies were available to Plaintiff.

Second, if those remedies were available, "the court should . . . inquire as to whether [some or all of] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it . . . or whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." *Id*. (citations omitted). Here, Defendants have not forfeited the defense. Defendants preserved the exhaustion defense by asserting it in their answers. (Dkt. No. 11 ¶ 9; Dkt. No. 11-1 ¶ 9; Dkt. No. 11-2 ¶ 9; Dkt. No. 11-3 ¶ 9; Dkt. No. 31 ¶ 16.) Further, Defendants are not estopped from asserting the defense. It is true that Plaintiff asserts that his attempts to file a grievance were thwarted. (Dkt. No. 1 at 4, 9; Dkt. No. 45-4 at 126:2-127:3.) A prison official's refusal to accept or forward a prisoner's grievance estops him from asserting the defense. *See Sandlin v. Poole*, 575 F. Supp. 2d 484, 488 (W.D.N.Y. 2008). But here there is no allegation that any named Defendant prevented Plaintiff from filing

---

[6] The Second Circuit has not yet decided whether the *Hemphill* rule has survived the Supreme Court's decision in *Woodford*, 548 U.S. 81. *Amador v. Andrews*, 655 F.3d 89, 102 (2d Cir. 2011).

10

grievances.  Therefore, Defendants are not estopped from asserting the defense.

Third, if the remedies were available and some of the defendants did not forfeit, and are not estopped from raising, the non-exhaustion defense, "the court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements." *Hemphill*, 380 F.3d at 686 (citations and internal quotations omitted).  Justification "must be determined by looking at the circumstances which might understandably lead . . . uncounselled prisoners to fail to grieve in the normally required way." *Giano v. Goord*, 380 F.3d 670, 678 (2d Cir. 2004).

Here, Plaintiff has presented evidence that he attempted to file grievances at the first and second levels that were not processed.  (Dkt. No. 1 at 4; Dkt. No. 1 at 9; Dkt. No. 45-4 at 126:2-127:20.)  There is evidence that he then attempted to appeal this failure to respond to CORC, as required by DOCCS policy.  (Dkt. No 45-4 at 185.)  There is evidence that CORC rejected that attempt.  (Dkt. No. 45-7 at 4.)

Plaintiff's attempt to appeal to CORC distinguishes this case from *Veloz v. New York*, 339 F. Supp. 2d 505, 514 (S.D.N.Y. 2004), cited by Defendants.  (Dkt. No. 45-2 at 9.)  There, a prisoner contended that the grievances he placed in the mail were either misplaced or destroyed. *Veloz*, 339 F. Supp. 2d at 514.  The prisoner did not offer evidence that any particular officer thwarted his attempts to file a grievance.  *Id*. at 516.  Rather, "he simply contend[ed] that the practice of destroying or misplacing grievances must have been the cause of his grievances being lost."  *Id*.  The prisoner did not attempt to appeal the failure to respond to the next level of review.  *Id*.  Accordingly, the court found that the prisoner's allegations regarding exhaustion stood "alone and unsupported" and dismissed the claims for failure to exhaust.  *Id*. at 516-17.

11

Here, as discussed above, Plaintiff does allege that a particular officer thwarted his attempts to exhaust and has provided evidence that he attempted to appeal the failure to respond.

Defendants offer three reasons that the Court should reject Plaintiff's evidence regarding justification. First, Defendants argue that Plaintiff's testimony that a Sergeant Manos ripped up his grievances cannot be credited because there was no employee named Manos at Clinton during the relevant time period. (Dkt. No. 45-2 at 7.) Second, Defendants argue that Plaintiff's statement in his letter to CORC that he "attempted" to file grievances with the IGRC and superintendent but that they "have not responded" indicates that he believed that his grievances had been filed. *Id*. at 7-8. Defendants argue that Plaintiff would not have believed that if he had seen the grievances being ripped up. *Id*. Third, Defendants argue that the fact that Plaintiff's letter arrived safely at CORC and was responded to indicates that his mail was not being tampered with. *Id*. at 8-9.

Each of Defendants' arguments hinges on Plaintiff's credibility. "Credibility determinations . . . are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255; *see also Rule v. Brine, Inc*., 85 F.3d 1002, 1011 (2d Cir. 1996) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment."). Defendants argue that in analyzing the exhaustion issue the Court should apply a narrow exception to this general rule. (Dkt. No. 45-2 at 10.) In *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005), the Second Circuit held that in the "rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete," the court may appropriately conclude at the summary judgment stage that no reasonable jury would credit the plaintiff's testimony. *Jeffreys*, 426 F.3d at 554. I decline to

12

apply the *Jeffreys* exception here because Plaintiff's statements regarding his grievances in his letter to CORC, the complaint, his deposition, and his opposition to the motion for summary judgment are not directly contradictory.

Regarding Defendants' three arguments, I find that a reasonable trier of fact could find in Plaintiff's favor. First, a reasonable trier of fact could conclude that DOCCS records do not show the existence of a Sergeant Manos because Plaintiff simply misnamed the sergeant. Second, a reasonable trier of fact could infer from Plaintiff's use of the word "attempt" that he knew his grievances had not actually been filed with the IGRC or the superintendent. Third, a reasonable juror could credit Plaintiff's evidence and find that his letter reached CORC because he had another inmate send it.

For the reasons discussed above, I find that Plaintiff has raised a triable issue of fact that special circumstances justified his failure to properly exhaust his administrative remedies. Therefore, I recommend that the Court deny Defendants' motion for summary judgment dismissing Plaintiff's excessive force claims for failure to exhaust administrative remedies.

   2.   Merits

Defendants argue that Plaintiff's excessive force claims against Defendants Grimshaw and Olsen must be dismissed because there is no evidence that either of them used any force on Plaintiff. (Dkt. No. 45-2 at 13-16.) For the reasons discussed below, I find that Plaintiff has raised a triable issue of fact that these Defendants used excessive force.

When prison officials are "accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to

cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). "In determining whether the use of force was wanton and unnecessary," the court should evaluate "the need for application of force, relationship between that need and the amount of force used, the threat reasonably perceived by responsible officials, and any efforts made to temper the severity of a forceful response." *Id*. at 7 (citation and quotation marks omitted). Not "every malevolent touch by a prison guard gives rise to a federal cause of action. The Eighth Amendment's prohibition of cruel and usual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id.* at 9 (citations and internal quotation marks omitted).

In his complaint, Plaintiff alleges that he was balled up in a protective position throughout most of the alleged excessive force incident. (Dkt. No. 1 at 5-6.) At his deposition, Plaintiff testified that he saw Defendants Grimshaw and Olsen in the room during the incident, but that he could not say for sure that either kicked or punched him because "I fell and they were kicking and punching, he could have been one of those, but for me to tell you that I seen him do it, that would be incorrect." (Dkt. No. 45-4 at 148:3-149:24.) Defendants argue that, thus, there is no evidence that either Defendant or Olsen used any force on Plaintiff. (Dkt. No. 45-2 at 15.) Defendants' argument is without merit. A reasonable trier of fact could draw the inference that Defendants Grimshaw and Olsen used force on Plaintiff, given that they were in the room during the attack and that Plaintiff, who was balled up in a protective position during much of the attack, could not observe who was hitting him or kicking him. I note that the record does not contain a declaration from either Defendant Grimshaw or Defendant Olsen stating that he did not use force. Therefore, I recommend that the Court deny Defendants' motion for summary judgment

dismissing the excessive force claims against Defendants Grimshaw and Olsen.[7]

B. **Conspiracy Claims**

Defendants move for summary judgment dismissing Plaintiff's conspiracy claims, arguing that they are entitled to judgment due to Plaintiff's failure to exhaust administrative remedies, on the basis of the intracorporate conspiracy doctrine, and on the merits. (Dkt. No. 45-2 at 6, 10-13.)

1. Exhaustion of Administrative Remedies

As discussed above, Plaintiff did not properly exhaust his administrative remedies because he did not receive a decision from CORC before filing this action. Defendants argue that Plaintiff's failure to exhaust his conspiracy claim should not be excused because Plaintiff admits that he did not even attempt to exhaust his remedies regarding that claim. (Dkt. No. 45-2 at 6.) Defendants are correct. Plaintiff testified at his deposition that the grievance he attempted to file at the first and second levels of review and the letter he wrote to CORC involved only the excessive force incident itself. (Dkt. No. 45-4 at 127:23-128:4.) Thus, Plaintiff did not even attempt to exhaust his administrative remedies regarding the alleged conspiracy to cover up the incident. Therefore, I recommend that the Court dismiss Plaintiff's conspiracy claims for failure to exhaust administrative remedies. I will address Defendants' other arguments in order to create a complete record for the Court's review.

2. Intracorporate Conspiracy Doctrine

Defendants argue, in the alternative to the exhaustion issue, that Plaintiff's conspiracy

---

[7] Even if these Defendants did not use force on Plaintiff, they could potentially be held liable for failing to protect Plaintiff from the attack by the other officers. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

claims are barred by the intracorporate conspiracy doctrine. (Dkt. No. 45-2 at 12-13.) This argument is without merit.

The intracorporate conspiracy doctrine states that employees of a single corporate entity are legally incapable of conspiring together. *Bond v. Board of Educ. of City of New York*, No. 97-cv-1337, 1999 U.S. Dist. LEXIS 3164, at *6, 1999 WL 151702, at *2 (W.D.N.Y. Mar. 17, 1999). "This doctrine applies to public entities and their employees." *Lee v. City of Syracuse*, 603 F. Supp. 2d 417, 442 (N.D.N.Y. 2009) (citations omitted). The Second Circuit has recognized the doctrine in the context of 42 U.S.C. § 1985, (*Herrmann v. Moore*, 576 F.2d 453, 459 (2d Cir. 1978); *Girard v. 94th and Fifth Ave. Corp.*, 530 F.2d 66, 72 (2d Cir. 1976)), but has not extended its application of the doctrine to conspiracy claims under § 1983. Several district courts in the Second Circuit have applied the doctrine, without discussion, to § 1983 cases. *See Samms v. Fischer*, No. 9:10-CV-0349 (GTS/GHL), 2011 U.S. Dist. LEXIS 97807, at *22 n.8, 2011 WL 3876528, at *15 n.8 (N.D.N.Y. Mar. 25, 2011) (collecting cases)[8]. In *Anemone v. Metropolitan Transportation Authority*, 419 F. Supp. 2d 602, 604 (S.D.N.Y. 2006), the Southern District squarely held that the intracorporate conspiracy doctrine should be applied to § 1983 cases. Like that court, in the absence of any authority to the contrary, this Court

> will continue to apply the intracorporate conspiracy doctrine to Section 1983 claims because the doctrine's logic is sound. A civil rights conspiracy requires an agreement between two or more actors to inflict an unconstitutional injury. This 'two or more actors' requirement cannot be satisfied where all of the alleged conspirators are employees of a single entity and acting within the scope of their employment as agents of that entity.

---

[8] The Court will provide Plaintiff with a copy of this unpublished decision in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

*Id.* (citation omitted).⁹

However, my finding that the intracorporate conspiracy doctrine applies here is not dispositive of Plaintiff's conspiracy claims. Even where the intracorporate conspiracy doctrine applies, there is an exception to the doctrine where "individuals pursue personal interests wholly separate and apart from the entity." *Orafan v. Goord*, 411 F. Supp. 2d 153, 165 (N.D.N.Y. 2006) (citation and quotation marks omitted), *vacated and remanded on other grounds*, *Orafan v. Rashid*, No. 06-2951, 249 Fed. App'x 217 (2d Cir. Sept. 28, 2007). Courts have found that the personal interest exception applies, and thus allowed conspiracy claims to proceed, where it was alleged that officers conspired to cover up their use of excessive force. *Hill v. City of New York*, No. 03 CV 1283, 2005 U.S. Dist. LEXIS 38926, at *19-20, 2005 WL 3591719, at *6 (E.D.N.Y. Dec. 30, 2005). Here, that is precisely what Plaintiff alleges. Therefore, Plaintiff's conspiracy claims are not barred by the intracorporate conspiracy doctrine.

       3.     Merits

Defendants argue that Plaintiff has failed to state a conspiracy claim because his allegations are conclusory. (Dkt. No. 45-2 at 11-12.) Defendants are correct. Thus, Plaintiff's conspiracy claims would be subject to dismissal even if Plaintiff had exhausted his administrative remedies.

"To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages."

---

⁹    On appeal, the Second Circuit affirmed the trial court's judgment but declined to address the intracorporate conspiracy issue. *Anemone*, 629 F.3d at 121.

*Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999) (citations omitted). "[C]onclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights" are insufficient to state a valid conspiracy claim. *Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983) (per curiam).

Plaintiff testified at his deposition that he could not name which Defendants were involved in the alleged conspiracy. (Dkt. No. 45-4 at 134:12-14.) Specifically, he stated that "I'm not going to sit here and give you names that I don't know. I'm not going to be guessing the names." *Id*. Without being able to identify who was involved in the alleged conspiracy, Plaintiff cannot raise a triable issue of fact as to any of the three elements of his conspiracy claim. Therefore, in the alternative to dismissing Plaintiff's conspiracy claim for failure to exhaust administrative remedies, I recommend that the Court dismiss Plaintiff's conspiracy claim on the merits.

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 45) be **GRANTED IN PART AND DENIED IN PART**. It is recommended that the Court dismiss Plaintiff's conspiracy claims and allow Plaintiff's excessive force claims to proceed; and it is further

**ORDERED** that the Clerk provide Plaintiff with copies of *Mendez v. Artuz*, No. 01 CIV. 4157, 2002 U.S. Dist. LEXIS 3263, 2002 WL 313796 (S.D.N.Y. Feb. 27, 2002); *Bond v. Board of Educ. of City of New York*, No. 97-cv-1337, 1999 U.S. Dist. LEXIS 3164, 1999 WL 151702 (W.D.N.Y. Mar. 17, 1999); *Samms v. Fischer*, No. 9:10-CV-0349 (GTS/GHL), 2011 U.S. Dist. LEXIS 97807, 2011 WL 3876528 (N.D.N.Y. Mar. 25, 2011); and *Hill v. City of New York*, No.

03 CV 1283, 2005 U.S. Dist. LEXIS 38926, 2005 WL 3591719 (E.D.N.Y. Dec. 30, 2005).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989) (per curiam)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).

Dated: March 4, 2013
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge